UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHRISTOPHER L. DERYCK,**<br><br>Plaintiff,<br><br>v.<br><br>**DEPARTMENT OF DEFENSE,** *et al.*,<br><br>Defendants. | Case No. 1:22-cv-3290 (TNM) |

## MEMORANDUM ORDER

Christopher Deryck, a Navy employee, sues various federal agencies and their employees under the Privacy Act, Freedom of Information Act, and Due Process Clause. Deryck seeks documents related to the revocation of his security clearance. He also alleges that Defendants violated his due process rights by withholding those documents and revoking his clearance. Defendants move to dismiss Deryck's due process claims (Counts III-VI) for failure to state a claim.[1] The Court grants that motion because Deryck fails to allege that they deprived him of a liberty or property interest by withholding the documents, and precedent forecloses his due process claims about the revocation of his clearance.

I.

Deryck has worked for the Navy for about 20 years and has a high-level security clearance. *See* Compl. ¶¶ 6, 13, ECF No. 1. A few years ago, the Navy accused him of using his cellphone in secured areas, in violation of protocol. *See id.* ¶ 7. The Navy investigated the

---

[1] Defendants initially moved to dismiss the entire Complaint for improper service, *see* Defs.' Mot. to Dismiss at 10, ECF No. 13, but it withdrew that argument after Deryck perfected service, *see* Defs.' Reply at 1 n.2, ECF No. 34. So the Court does not consider it.

violation and interviewed Deryck and his colleagues. *See id.* ¶ 8; *see also* Ex. A, ECF No. 1-2.[2] One reported that several colleagues had witnessed Deryck repeatedly using his phone in a secured area, despite being told to stop. *See* Ex. A. Deryck conceded that this violated Navy policy and that he exercised poor judgment. *See id.* He also stated that he had forgotten that his phone was in his bag and answered it because it rang. *See id.* Deryck also expressed that his workload, the current political climate, the COVID-19 pandemic, and more were causing him stress and anxiety. *See id.* Another co-worker described his behavior around the time of the violations as "erratic," expressing concerns that he "may not be mentally stable." *Id.*

Following these interviews, the investigating officer recommended that the Navy take no further action. *See* Compl. ¶ 10. Nonetheless, the Navy decided to administratively suspend Deryck's security clearance pending further review. *See id.*; *see also* Ex. B. A few months later, the Navy suspended him indefinitely without pay and referred the case to a Department of Defense adjudicator.[3] *See* Compl. ¶ 12; *see also* Ex. B. Soon after, Deryck "requested a copy of all the materials relied upon in support of" that decision, and the Navy produced documents. *See* Ex. B.

About a year later, DOD sent Deryck a letter and a statement of reasons supporting its preliminary decision to revoke his security clearance. *See* Compl. ¶ 14; *see also* Ex. D. DOD found that Deryck had repeatedly brought his phone into a secured area despite warnings. *See* Ex. D. More, several of Deryck's co-workers expressed concerns that he was exhibiting anxious

---

[2] Deryck combines all exhibits attached to his Complaint into ECF No. 1-2. Thus, the Court will refer to them by exhibit name but without specific ECF numbers.

[3] The entity responsible for adjudicating clearance revocations is the Defense Counterintelligence and Security Agency, formerly known as the Department of Defense Consolidated Adjudications Facility. For clarity, the Court refers to it as DOD because it is a subsidiary of that Department.

and irrational behavior at work. *See id.* DOD informed Deryck that he has a right to challenge the preliminary decision and request the records upon which DOD relied. *See id.*

Deryck requested those records "so that he may meaningfully and intelligently" respond to DOD's statement of reasons and get his clearance reinstated. Compl. ¶ 16; *see also* Ex. E. DOD responded about a month later, releasing one record and listing others that "fall under the release authority of the Office of the Chief of Naval Operations," whose Privacy Office would respond further. Ex. M. Deryck then filed a FOIA request with DOD a few months later seeking a long list of records related to him. *See* Ex. O. DOD partially released some records to him and withheld 35 responsive records under various exemptions. *See* Ex. R.

After he received DOD's preliminary decision of its intent to revoke his clearance, Deryck also sent the Navy a FOIA request for "[a]ny and all investigations by the Navy, including any preliminary inquiries [regarding him] in 2020[.]" *See* Compl. ¶ 15; *see also* Ex. F. A few months later, Deryck asked the Navy to expedite processing of that request. *See* Compl. ¶ 19; *see also* Ex. G. The Navy produced one responsive record to him soon after. *See* Compl. ¶ 23; *see also* Ex. F. A few days later, Deryck sent the Navy a more detailed FOIA request seeking other records about him and his workplace conduct, including a copy of his psychological evaluation. *See* Compl. ¶ 24; *see also* Ex. K. The Navy responded that DOD possessed certain records he sought. *See* Compl. ¶ 25 (citing Ex. L).[4]

Dissatisfied with both agencies' responses to his records requests, Deryck sued them and their officials. He argues that the Navy "either intentionally or negligently failed to identify and

---

[4] Deryck's exhibits muddle this point somewhat, as it looks like the Navy was referencing a different FOIA request in this letter. *Compare* Ex. L (informing Deryck that he should ask DOD for records sought on July 6 pertaining to "security clearance records and its denial reasoning"), *with* Ex. K (FOIA request dated June 27 asking for different records).

provide" all documents he requested under the Privacy Act and FOIA. *Id.* ¶¶ 27, 29–31, 33 (Counts I and II). And he argues DOD did the same, plus improperly asserted Privacy Act and FOIA exemptions. *See id.* ¶¶ 38–41 (Counts I and II). According to Deryck, these violations of the Privacy Act and FOIA also violate his due process rights. He claims both agencies are impeding his ability to contest the revocation of his security clearance. *See id.* ¶¶ 32–33, 42, 57–63 (Count III). He also sues agency officials acting in their official capacities under the same due process theory. *See id.* ¶¶ 72–79 (Count V). Finally, Deryck argues that Defendants revoked his clearance in a discriminatory manner, depriving him of due process. *See id.* ¶¶ 65–70 (Count IV).

He seeks various forms of declaratory and injunctive relief plus one hundred million dollars in damages. *See id.* ¶¶ 85–93. Defendants move to dismiss Counts III–VI for failure to state a claim. *See* Mot. to Dismiss (MTD), ECF No. 13. This Court has jurisdiction under 28 U.S.C. § 1331.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," "formulaic recitation of the elements," and "naked assertion[s] devoid of further factual enhancement" do not suffice. *Id.*

At the motion to dismiss stage, the Court treats the Complaint's factual allegations as true and draws inferences in Plaintiff's favor. *See Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). But the Court need not accept inferences unsupported by facts. *See*

4

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A court may consider "the facts alleged in the complaint [and] documents either attached to or incorporated in the complaint[.]" *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.

The Court first addresses Deryck's due process arguments against Defendants and then his *Bivens* claim against the individual officers.

### A.

Deryck first argues that Defendants are denying him procedural and substantive due process by withholding records "that served as the basis for the security clearance suspension." Compl. ¶¶ 58, 79.  Without these records, he says he cannot rebut DOD's decision to revoke his clearance, and with it, his job.  *See id.* ¶¶ 57, 61.  Defendants argue that he fails to state a claim. *See* MTD at 11–13.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  For procedural due process, the Court's "first inquiry" is whether Deryck alleges that he "has been deprived of a protected interest in liberty or property." *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (cleaned up).  If he has not, those claims must be dismissed.  *See, e.g.*, *Palmieri v. United States*, 72 F. Supp. 3d 191, 206–07 (D.D.C. 2014), *aff'd,* 896 F.3d 579 (D.C. Cir. 2018).  For substantive due process, the Court assess whether Deryck has alleged that "egregious government misconduct" deprived him of a constitutionally recognizable liberty or property interest.  *See, e.g.*, *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 206 (D.C. Cir. 2003).  In other words, both claims turn on his ability to identify a protected liberty or property interest.

Deryck fails to do so. He cites no authority (nor is the Court aware of any) that he somehow has a property interest in the documents he seeks. And because Deryck does not "ha[ve] a right to a security clearance," *Doe v. Cheney*, 885 F.2d 898, 909 (D.C. Cir. 1989); *Dep't of Navy v. Egan*, 484 U.S. 518, 528 (1988), the revocation of his clearance "cannot serve as a predicate liberty or property interest," *Palmieri*, 72 F. Supp. 3d at 206–07.

Reframing his property interest as one in continued employment, *see* Pl.'s Opp'n at 14, ECF No. 31, does not help. While some federal employees may have property interests in their jobs, those who must hold security clearances do not. *See, e.g.*, *Palmieri*, 72 F. Supp. 3d at 205; *see also Stehney v. Perry*, 101 F.3d 925, 936 (3d Cir. 1996) (noting that every court of appeals to address the issue "has ruled that a person has no constitutionally protected liberty or property interest in a . . . job requiring a security clearance"). This is because the job depends on the employee's eligibility to access classified information. In other words, the job and the clearance "form one indivisible whole." *Lamb v. Millennium Challenge Corp.*, 498 F. Supp. 3d 104, 111 (D.D.C. 2020).

Deryck final argument—which he puzzlingly includes under his FOIA count—pertains to his reputation. He claims that his "professional reputation is being ruined" and his "ability to ever again work in this highly specialized field or gain comparable employment elsewhere is in jeopardy." Compl. ¶ 54. Deryck clarifies in his opposition that through these two assertions, he is pursuing a "stigma plus" theory of due process injury based on injury to his reputation. *See* Pl.'s Opp'n at 23–25.

To state a claim under this theory, he must plead facts showing that Defendants imposed a "continuing stigma . . . that foreclosed" his ability to pursue other employment opportunities. *See, e.g.*, *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998). That is a "high" bar

because Deryck must show that Defendants have "seriously affected, if not destroyed, his ability to obtain employment in [his] field." *Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995).

Deryck does not. He merely states that Defendants are ruining his reputation and preventing him from gaining other specialized employment. *See* Compl. ¶ 54. Such conclusory allegations are insufficient. *See Iqbal*, 556 U.S. at 678. Deryck must plead *factual* content in his Complaint supporting these assertions; otherwise they are merely "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.*

In his Opposition, Deryck supplies more facts. *See* Pl.'s Opp'n at 23–25 (explaining that Deryck works in a "very specific niche that does not have a civilian equivalent" and that losing his clearance is a "constructive bar to federal positions"). Deryck, who is represented by counsel, cannot amend his Complaint through his opposition to the motion to dismiss. *See, e.g.*, *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 165 n.10 (D.D.C. 2014). So the Court does not consider these facts.

But even if he had included them at the outset, Deryck would still fail to state a claim. He has not pled facts sufficient to meet the "high" bar that the Government has "seriously affected, if not destroyed, his ability to obtain employment in [his] field." *Taylor*, 56 F.3d at 1506. Indeed, Deryck concedes that he can reapply for a security clearance in a year. *See* Pl.'s Opp'n at 25. His reputation-based due process theory thus fails. *Accord Garcia v. Pompeo*, No. 18-cv-1822, 2020 WL 134865, at *6–7 (D.D.C. Jan. 13, 2020) (rejecting stigma-plus due process argument stemming from revocation of a security clearance).[5]

---

[5] Some tension exists between the stigma-plus line of cases and those affirming the Government's broad discretion to revoke security clearances in the interests of national security. Surely, if the Government considers an employee an ongoing threat, it may preclude that

Because Deryck fails to allege a property or liberty interest, the Court will dismiss Count III.  To be sure, Deryck may continue to seek these records under FOIA and the Privacy Act (Counts I and II).  But he may not short-circuit that process by constitutionalizing routine document requests.

**B.**

Deryck next claims that Defendants improperly revoked his security clearance by discriminating against him, which also deprived him of due process.  *See* Compl. ¶¶ 66–70 (Count IV).  Defendants argue that precedent forecloses any challenge to the security clearance revocation.  *See* MTD at 14–15.

The Supreme Court has held that agency decisions to revoke security clearances are unreviewable.  *See Egan*, 484 U.S. at 527.  This is so because revocation decisions are "sensitive and inherently discretionary judgment call[s]" committed by law to agencies.  *Id.*  Courts are thus "institutionally ill-suited to second-guess" expert judgments about the security risk someone poses.  *Id.* at 529.  The Court agrees with Defendants that if Deryck seeks review of the revocation decision, that claim is foreclosed by *Egan*.  *See* MTD at 14–15.

Deryck counters that he is not challenging the revocation of his clearance but alleged constitutional violations in doing so—which triggers an exception to *Egan*.  *See* Pl.'s Opp'n at 26.  This is less than clear from the facts he includes in his Complaint.  *See, e.g.*, Compl. ¶¶ 66–69 (discussing why DOD revoked his clearance, the agency guidance governing clearance

---

individual from holding a clearance-level position again.  *See, e.g.*, *Egan*, 484 U.S. at 528 ("The grant of clearance requires an affirmative act of discretion on the part of the granting official . . . only when clearly consistent with the interests of the national security" (cleaned up)).  But the Circuit has not weighed in on that question and the Court need not do so here.

revocations, and the burden of proof). In any event, the Court finds that his claims fail to qualify for the exception to *Egan*.

The Circuit has held that *Egan* "does not [bar] actions alleging deprivation of constitutional rights." *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999). For example, a claim challenging the constitutionality of "methods used to gather information on which a [clearance decision] presumably will be based" may proceed. *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993). But constitutional claims about a security clearance revocation have to be "colorable" lest they swallow the rule that security clearance revocations are committed to agency discretion. *Id.* at 289. Deryck cannot circumvent *Egan* by asserting an "immaterial" or "frivolous" constitutional claim. *Palmieri v. United States*, 896 F.3d 579, 585 (D.C. Cir. 2018); *see also Garcia*, 2020 WL 134865, at *7 ("[M]erely mouthing a constitutional claim will not do.").

While Deryck's constitutional claims are not entirely clear, he appears to allege two. First, Defendants violated his due process rights while revoking his clearance. *See* Compl. ¶ 71. Second, DOD unconstitutionally applied its directive governing clearance revocations to him. *See id.* ¶¶ 67–71; *see also* Pl.'s Opp'n at 27–29 (fleshing out this claim). But Deryck does not explain *how* Defendants violated his due process rights. He merely suggests that DOD acted improperly by suspending his clearance when the investigating officer did not recommend it. *See* Compl. ¶ 68. But he cites no authority (nor is the Court aware of any) that DOD must adopt its investigating officers' conclusions, let alone that its failure to do so is unconstitutional.

Similarly, Deryck does not say what constitutional right(s) Defendants violated by applying the directive governing security clearance revocations. *See* Compl. ¶ 71. Nor does he plead specific facts. *See, e.g., id.* (accusing Defendants of "inserting unconstitutional criteria"

9

into their clearance-revocation processes without further explanation). And, as Defendants point out, the directive also explains that it does not create any substantive rights that are judicially-enforceable. *See* Def.'s Reply at 6, ECF No. 34. The Court need not credit such factually-deficient allegations, *see Iqbal*, 556 U.S. at 678, and they certainly do not meet the "colorable" standard necessary to circumvent *Egan*'s bar, *Greenberg*, 983 F.2d at 290; *see also, e.g.*, *Palmieri*, 896 F.3d at 585. Recall that many courts have held that individuals lack property or liberty interests in security clearances (or jobs requiring them). *See supra* Part III.A; *see also* Def.'s Reply at 6–7. That line of cases applies here.

Deryck argues for the first time in his Opposition that the directive violates the APA. *See* Pl.'s Opp'n at 31. But of course he may not amend his Complaint through his Opposition. *See, e.g.*, *Kingman Park Civic Ass'n*, 27 F. Supp. 3d at 165 n.10. No facts in his Complaint support the myriad APA claims referenced in his Opposition. If Deryck believes that passing references to agency delay qualify, *see* Compl. ¶ 17, any such factual allegations fall short of a "short and plain statement of [a] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also* Def.'s Reply at 6–7.

For all these reasons, the Court will dismiss Count IV.

## C.

Deryck also sues several individual officers employed by the agency Defendants under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), for denying him due process. *See* Compl. ¶¶ 73–79 (Count V). His allegations against these officers are more of the same: they revoked his clearance "without providing him all relevant materials to defend

himself." *Id.* ¶ 79.  And they "fail[ed] to follow the proper processes . . . governing security clearances."  *Id.* ¶ 78.

In *Bivens*, the Supreme Court authorized a damages action against federal officials for Fourth Amendment violations.  Since it decided *Bivens*, however, the Supreme Court "has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity."  *Ziglar v. Abbasi*, 582 U.S. 120, 134 (2017).  Indeed, the Court has only twice recognized contexts where a *Bivens* action was appropriate.  One was a Fifth Amendment sex-discrimination claim, *see Davis v. Passman*, 442 U.S. 228 (1979), and the other was an Eighth Amendment deliberate indifference claim, *see Carlson v. Green*, 446 U.S. 14 (1980).  *Bivens* is appropriately limited because Congress is better positioned to create causes of action.  *See Egbert v. Boule*, 142 S. Ct. 1793, 1802–03 (2022).

Courts apply a two-step framework to analyze whether *Bivens* applies.  First, is this case "meaningfully different from the three cases in which the Court has implied a damages action"?  *Id.* at 1803.  Second, if the claim arises in a new context, a *Bivens* remedy is unavailable if "special factors" counsel hesitation.  *Id.*  One such "special factor" is whether Congress has provided an alternative remedial structure.  *Id.* at 1804.  "[T]hat alone . . . may limit the power of the Judiciary to infer a new *Bivens* cause of action."  *Ziglar*, 582 U.S. at 137.

Deryck seeks to expand *Bivens* to a new context.  The Court has never recognized a *Bivens* claim stemming from an agency's alleged failure to produce records.  Ditto for one about the revocation of a security clearance.  More, two "special factors" counsel against applying *Bivens* here.  *Accord id.* at 142–43.

*First*, Deryck has an "alternative remedy in the Privacy Act [and FOIA], which precludes his requested *Bivens* remedy."  *Liff v. Off. of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d

11

912, 922 (D.C. Cir. 2018).  Deryck—as he has done in this very suit—may seek the withheld records under these other federal laws.  Even if the Privacy Act and FOIA do not "provide a complete remedy for the injury" Deryck asserts, their existence as a "comprehensive scheme . . . stops [this Court] from providing additional remedies under *Bivens*."  *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008); *see also Storms v. Shinseki,* 319 F. Supp. 3d 348, 358 (D.D.C. 2018), *aff'd,* 777 F. App'x 522 (D.C. Cir. 2019) (per curiam).

*Second*, "national security" counsels against expanding *Bivens* to a new context.  *See Ziglar*, 582 U.S. at 142.  This is so because "[t]he risk of personal damages liability is more likely to cause an official to second-guess difficult but necessary decisions concerning national security policy."  *Id.*  Because Deryck's *Bivens* claim in part turns on agency officials' revocation of his security clearance—a matter of obvious national security importance—*Bivens* is not appropriate.  *Accord id.* at 143–44.

Deryck's counterarguments are unpersuasive.  *First,* he argues that *Egbert* "does not appear to explicitly foreclose" extending *Bivens* here.  *See, e.g.*, Pl.'s Opp'n at 32–33.  Fair enough.  But its two-part test counsels against extending *Bivens* to cover due process claims stemming from a security clearance revocation and a failure to produce documents.  *See supra*.

*Second*, he argues that his claims resemble the due process claims in *Davis v. Passman*, and thus do not extend *Bivens* to a new context.  *See* Pl.'s Opp'n at 33.  Not so.  The only similarity between his case and *Davis* is that both invoke the Fifth Amendment.  *Compare* Compl. ¶¶ 57, 62, 71, *with Davis*, 442 U.S. at 231.  While *Davis* involved sex-discrimination claims, *see* 442 U.S. at 231, Deryck presses arguments about the officers' failure to produce documents, *see, e.g.*, Compl. ¶ 58.  These contexts are not similar.  More, the Court has made clear that even in cases presenting "almost parallel circumstances," *Davis* "carries little weight

because it predates [the Supreme Court's] current approach to implied causes of action." *Egbert*, 142 S. Ct. at 1808.

Even if the Court found that *Bivens* applied, it would dismiss this claim because the officials are entitled to qualified immunity. *See* MTD at 18–20. Deryck does not show that their "conduct . . . violate[d] clearly established statutory or constitutional rights." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). So the officials are immune from civil liability. *See id.*; *accord Fox v. District of Columbia*, 794 F.3d 25, 29 (D.C. Cir. 2015).

In sum, the Court agrees with the individual officers that Count V should be dismissed.

### D.

Deryck also sues all Defendants for damages based on the alleged violation of his due process rights. *See* Compl. ¶¶ 82–83 (Count VI). But sovereign immunity shields the agency Defendants from suit because Deryck does not show that they have waived sovereign immunity in this context. *See, e.g.*, *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also* MTD at 20. More, he does not oppose the Government's motion to dismiss this count. *See generally* Pl.'s Opp'n. And because the Court rejects Deryck's *Bivens* claims, he cannot recover damages against the individual officers either. *See, e.g.*, *Ziglar*, 582 U.S. at 155.

### IV.

For these reasons, the Court GRANTS Defendants' motion to dismiss Deryck's Due Process claims (Counts III and IV), his *Bivens* claim (Count V), and his damages request (Count VI). Deryck's Privacy Act and FOIA claims (Counts I and II), will proceed to summary judgment. Because only Privacy Act and FOIA claims remain, the Court dismisses Defendants Joy F. Greene, Admiral Samuel J. Papro, Captain Dustin Wallace, and Darlene A. Lovell-Parker. *See, e.g.*, *Cunningham v. DOJ*, 961 F. Supp. 2d 226, 240 (D.D.C. 2013) (noting that FOIA only

permits suits against agencies); *Bailey v. BOP*, 133 F. Supp. 3d 50, 56 (D.D.C. 2015) (same for Privacy Act).  Likewise, because Deryck concedes he failed to serve federal employees named as John Does 1-10, *see* Pl.'s Opp'n at 12, the Court dismisses those Defendants too.

Agency Defendants are ORDERED to file their Answer to Deryck's FOIA and Privacy Act claims on or before June 7, 2023.

**SO ORDERED.**

Dated: May 8, 2023                                                                TREVOR N. McFADDEN, U.S.D.J.