UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHRISTOPHER L. DERYCK**, <br><br> Plaintiff, <br><br> v. <br><br> **DEPARTMENT OF DEFENSE**, *et al.*, <br><br> Defendants. | Case No. 1:22-cv-3290 (TNM) |

## MEMORANDUM OPINION

Four years ago, the U.S. Navy revoked Christopher Deryck's security clearance and placed him on administrative leave for violating security policies. In the months that followed, Deryck sent several federal agencies Freedom of Information Act ("FOIA") and Privacy Act requests for documents related to his clearance revocation. Frustrated with the pace and substance of the responses, he sued the agencies and various officials under a host of legal theories.

Last year, the Court dismissed many of Deryck's claims and all the individual Defendants. *See Deryck v. Dep't of Def.*, No. 22-cv-3290, 2023 WL 3303832, at *7 (D.D.C. May 8, 2023). That left Deryck's FOIA and Privacy Act claims against the Department of Defense, the Department of the Navy, and the Defense Counterintelligence and Security Agency (together, the "Government"). Now each party seeks summary judgment on the remaining claims. Because the Government conducted reasonable searches and various exemptions justify its redaction and withholding decisions, the Court will grant summary judgment to the Government and deny it to Deryck.

I.

Deryck worked as a full-time, permanent civilian employee for the Navy for over 20 years. Compl. ¶ 6, ECF No. 1. To carry out his job, Deryck obtained a high-level security clearance and access to secured areas. *Id.* ¶¶ 7, 13. But in 2020, he was accused of bringing his personal cellphone into a secured area in violation Navy security policy. *Id.* ¶ 7. So the Navy launched an investigation during which agents interviewed Deryck and several of his colleagues. *Id.* ¶ 8; *see also* Compl. Ex. A.[1] Several employees reported that they saw Deryck using his cellphone within a restricted area. Compl. Ex. A. And Deryck admitted he answered his phone in a secured area. *Id.* He acknowledged that he knew the security policies prohibiting personal electronic usage and said he simply "made a mistake" and "exercised poor judgment." *Id.* Deryck also shared that he was suffering from stress and anxiety at work. *Id.* Several of Deryck's co-workers confirmed that he seemed stressed and erratic. *Id.*

Following the investigation, the Navy suspended Deryck's security clearance and placed him on paid administrative leave pending further review. Compl. Ex. B. Several months later, the Navy suspended him indefinitely without pay and referred the case to the Department of Defense ("DOD") Consolidated Adjudications Facility.[2] *Id.* Then the Facility sent Deryck a letter stating it had preliminarily decided to revoke his security clearance. Compl. Ex. D. The letter contained a Statement of Reasons ("SOR") describing how Deryck brought his phone into

---

[1] All the exhibits Deryck attached to his Complaint appear at ECF No. 1-2.

[2] The Facility later merged into the Defense Counterintelligence and Security Agency, explaining its status as a Defendant. *See* Defense Counterintelligence and Security Agency, *Renaming of the DOD CAF* (June 17, 2022), https://perma.cc/W8PS-PRKF. The Court may take judicial notice of this website because it is an official website of the United States Government. *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

secured areas, did not seem to handle stress well, and made his co-workers uncomfortable. *Id*. The letter told Deryck he could challenge the decision and request any underlying records. *Id*.

So Deryck followed up with three document requests, one to DOD and two to the Navy. These requests make up the crux of Deryck's lawsuit. So the Court briefly explains each one.

*The DOD Request*:  In May 2022, Deryck sent a twelve-part FOIA request (Request DCSA-M 22-07122) to DOD seeking records about the agency's investigation into his potential security violations. *See* Defs.' Mot. Summ. J. ("Defs.' MSJ") Greene Decl. ¶ 9, ECF No. 46-4. In response, DOD searched its "personnel vetting systems," "the Defense System for Security (DISS), Defense Central Index of Investigations (DCII), and DSCA's secure file system." *Id.* ¶ 10.  DOD searched these systems because they were "most likely to contain the records" Deryck sought. *Id.* Following the search, DOD produced 94 pages in full and two pages that were redacted in part. *Id.* ¶ 12.  It also withheld or fully redacted 35 pages. *Id.*

DOD then referred another 51 pages to the Navy. *Id.* ¶ 11; Defs.' MSJ Wallace Decl. ¶ 49, ECF No. 46-7. The Navy assigned a tracking number to this referral. Wallace Decl. ¶ 51. But due to "an administrative oversight," the Navy "did not realize that this was a referral" and mistakenly notified Deryck that it would close the case. *Id.* ¶ 53. Eventually, the Navy caught the mistake and released all 51 pages with redactions. *Id.* ¶¶ 49, 54–55.

At Deryck's request, DOD performed additional searches and found a physical record in a safe that had not been uploaded to their digital file systems. *Id.* ¶¶ 64–68. Yet Deryck maintains that DOD possesses another document that it has not released: a "Final Security Access Eligibility Report." *Id.* ¶ 69. DOD has not found this document despite its many searches. And it has told Deryck that the issuance of a Final Security Access Eligibility Report "does not always happen in practice as other documents are used to substitute for formal" final

reports. *Id.* ¶ 70. For instance, DOD claims that the "Decision on Proposed Indefinite Suspension"—which DOD already released to Deryck—likely served as the substitute here. *Id.* ¶ 71.

Meanwhile, another DOD office found additional responsive records, which were released to Deryck with redactions. Defs.' MSJ Alleman Decl. ¶¶ 7–11, ECF No. 46-2.

*The Navy Request*: Also in May 2022, Deryck sent a FOIA request (DON-NAVY-2022-008314) to the Navy seeking records on "investigations" and "preliminary inquiries" that related to him. Wallace Decl. ¶¶ 13–14. After discussions with Deryck that narrowed the scope of his request, the Navy produced 22 pages with partial redactions. *Id.* ¶ 20.

*The "Supplemental" Navy Request*: While the Navy was formulating its response to this first request, Deryck tried to submit a "supplemental" FOIA request by email a month later. *Id.* ¶¶ 25–28. But Deryck used the wrong email address, so the Navy first learned about this supplemental request when Deryck attached it to his Complaint. *Id.* ¶ 27.

Despite the email snafu, the Navy searched for and produced responsive records with partial redactions under FOIA Exemption 6. *Id.* ¶¶ 25, 29–48. One specific request requires further explanation. Deryck sought "[c]opies of any records of [him] entering or exiting the facility in which he worked, including entry/exit badging or any other means of tracking entry or exit from the facility for the past five (5) years." *Id.* ¶ 25. But DOD only produced "six months of swipe records . . . spanning from April 2020 through October 2020" because DOD automatically deletes these records on a rolling basis. *Id.* ¶¶ 60–62.

A few months after Deryck submitted these requests, he sued the Government. *See* Compl. His Complaint first contained six Counts. *Id.* ¶¶ 43–83. But the Court dismissed Counts III–VI for failure to state a claim. *See Deryck*, 2023 WL 3303832, at *7. So that leaves

4

Counts I and II, which allege that the Government improperly withheld documents in violation of the Privacy Act and FOIA. Compl. ¶¶ 43–55. In terms of relief, Deryck asks that the Court order the Government to disclose all requested records and award him reasonable costs and attorney's fees. *Id.* ¶¶ 49, 55.

Following the motion to dismiss, Deryck had only "two issues with the production." Jt. Status Rep. at 1, ECF No. 38. First, Deryck wanted more swipe records from the Navy. *See* Jt. Status Rep. at 1, ECF No. 41. Second, he insisted DOD should conduct additional searches for a "Final Security Access Eligibility Report," and specifically wanted it to search a system called "DoDlog." *Id.* at 2. In the Government's view, it already produced all available swipe records and "searched all locations where [Deryck's requested] documents could have been found." *Id.* at 1, 3.

Then, as the parties were negotiating a briefing schedule to resolve these narrow disputes, Deryck blanketly objected to all the Government's redaction and withholding decisions. Defs.' Mot. Modify Summ. J. Briefing Sch. ¶ 3, ECF No. 43. This greatly expanded the scope of summary judgment. *Id.* ¶ 4. So the Government obtained an extension to augment its arguments. Minute Order (Jan. 2, 2024). Then it moved for summary judgment addressing every withholding and redaction decision to each one of Deryck's FOIA requests. *See generally* Defs. MSJ, ECF No. 46. Deryck appears to seek summary judgment himself, although he never filed a formal cross-motion. *See* Pl.'s Opp'n & Cross-Mot. Summ. J. ("Pl.'s X-MSJ"), ECF No. 47. And over the course of summary judgment briefing, Deryck failed to address most of the Government's arguments. So, after several FOIA requests and various stops and starts along the way, only a few issues remain for adjudication. The Court addresses them below.

## II.

To prevail on a motion for summary judgment, the moving party must show "that there is no genuine issue as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A fact is "material" only if it affects the outcome of the litigation. *Id.* Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.*

Most FOIA cases can be resolved on summary judgment. *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Jud. Watch, Inc. v. FBI*, 522 F.3d 364, 365–66 (D.C. Cir. 2008). The agency bears the burden to show the applicability of the claimed exemptions, and courts construe these exemptions narrowly. *See ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).

A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA,* 697 F.2d 1095, 1102 (D.C. Cir. 1983). The Court may grant summary judgment based solely on these agency declarations if they are not contradicted by record evidence or by evidence of the agency's bad faith. *See Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017). In short, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible. *See*

6

*Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). Agency declarations receive "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (cleaned up).

The same standards apply to Privacy Act claims. *See, e.g.*, *Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

### III.

The parties ask the Court to decide three issues: whether (A) Deryck exhausted his administrative remedies on the supplemental Navy Request; (B) the Government conducted reasonable searches in response to Deryck's FOIA requests; and (C) the Navy properly redacted and withheld information under the Privacy Act. *See generally* Def.'s MSJ; Pl.'s X-MSJ; Defs.' Opp'n & Reply, ECF No. 48. So the Court addresses each one in turn.

### A.

First up, the supplemental Navy request. The Government argues that Deryck failed to exhaust his administrative remedies on this request, barring his ability to litigate it here. *See* Defs.' MSJ at 7–8. Deryck responds that the Government waived any exhaustion requirement because it accepted and processed the supplemental request. *See* Pl.'s X-MSJ at 14–17.

This skirmish over exhaustion misses a key threshold issue. Deryck has not raised a single specific objection to the Government's response on this request. So any dispute that may have once existed has now become moot.

Some background is necessary. Deryck's supplemental request sought eight types of documents: (1) a psychological evaluation report, (2) his timecards for the past five years, (3) his swipe records for the past five years, (4) Navy Command climate surveys, (5) email

7

communications between his supervisors and Navy leadership about his pay and time off, (6) copies of personnel actions involving him, (7) records about allegations against Command under the Antideficiency Act or Fair Labor Standards Act, and (8) Command policies on time off and overtime pay.  Wallace Decl. ¶ 25.

The Government released the psychological evaluation report, six months of swipe records, climate surveys, and Command policies without redactions.  *Id.* ¶¶ 31, 35, 37, 48.  After several searches, the Government found no copies of personnel actions or records relating to allegations under the Antideficiency Act or Fair Labor Standards Act that met Deryck's descriptions.  *Id.* ¶¶ 45–46.  Finally, the Government released the requested timecard records and email communications with redactions for privacy under FOIA Exemption 6.  *Id.* ¶¶ 33, 44.

At first, Deryck objected to the temporal scope of the swipe records that the Government produced.  *Id.* ¶ 59.  But after reading about the Government's swipe-record retention policy, which they discussed in their summary judgment papers, Deryck "concede[d] that . . . what the Defendants have provided regarding swipe records is, unfortunately, likely all that exists."  Pl.'s Reply 19, ECF No. 49.  Deryck also initially contended that the Government needed to provide corresponding Privacy Act exemptions for email communications that were redacted under FOIA Exemption 6.  *See* Pl.'s X-MSJ at 27.  But when the Government correctly pointed out that emails do not require Privacy Act exemptions because they are "not systems of records," Defs.' Opp'n & Reply at 11 (collecting cases), Deryck similarly withdrew his objection, Pl.'s Reply at 19 ("Plaintiff concedes that . . . government email systems are not systems of record subject to the Privacy Act.").

So the only two controversies surrounding the supplemental Navy request have become moot over the course of this litigation.  Under "the doctrine of mootness," the Court must

8

"refrain from deciding [an issue] if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *21st Century Telesis Joint Venture v. F.C.C.*, 318 F.3d 192, 198 (D.C. Cir. 2003) (cleaned up). Because there is no "actual, ongoing controvers[y]" over the supplemental Navy request, *id.* (cleaned up), the Court will leave it there without deciding whether Deryck exhausted his administrative remedies. *See Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1285 (D.C. Cir. 2016) (holding that addressing exhaustion before jurisdiction would "put[] the cart before the horse").

**B.**

On to the adequacy of the Government's searches. Recall the ground rules. Agencies must perform adequate searches in response to properly filed FOIA requests. *Larson*, 565 F.3d at 869. "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). This means "the adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of [its] methods.'" *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013) (cleaned up).

An agency must only show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). So "the agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *accord SafeCard Servs.*, 926 F.2d at 1201.

Deryck claims that the Government failed to conduct adequate searches in response to his FOIA requests. He argues that three facts undercut the adequacy of the searches: the fact that the Government (1) made clerical errors when they processed Deryck's requests, Pl.'s X-MSJ at 13; (2) did not find a "Final Security Access Eligibility Report," *id.* at 17–18; and (3) did not search the "DoDlogs" for the requested records, *id.* at 18. Each argument fails.

1.

First, the clerical errors and oversights. When it comes to FOIA requests, it is "unreasonable to expect even the most exhaustive search to uncover every responsive file." *W. Ctr. For Journalism v. IRS*, 116 F. Supp. 2d 1, 10 (D.D.C. 2000), *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001). So the agency need only show that it "conduct[ed] a good faith, reasonable search of those systems of records likely to possess the requested records," *Pinson*, 177 F. Supp. 3d at 80, and that it "admit[ted] and correct[ed] error when error [was] revealed," *W. Ctr. For Journalism*, 116 F. Supp. 2d at 10. Once an agency "corrects its error, it has complied with FOIA's demands." *Dillon v. DOJ*, 444 F. Supp. 3d 67, 92 (D.D.C. 2020); *see also Hodge*, 703 F.3d at 579–80 ("[B]y the time a court considers the matter, it does not matter that an agency's *initial* search failed to uncover certain responsive documents so long as subsequent searches captured them.").

Deryck recounts a laundry list of errors and oversights: the Government overlooked most of his requested items at the beginning of the search process, misinterpreted one of his requests, addressed an unrelated FOIA request, failed to act on a referral from another office, and initially overlooked a Security Access Eligibility Report ("SAER") that was stored in a safe. *See* Pl.'s X-MSJ at 17–18. These are, of course, mistakes—and significant ones at that. The agencies'

10

handling of this matter has been shoddy at times and reflects poorly on the Government as a whole.

Nonetheless, the Government ultimately conducted reasonable searches. Senior DOD officials attest that they searched the systems most likely to have the adjudicatory and investigatory documents Deryck requested. *See* Greene Decl. ¶ 10; Alleman Decl. ¶¶ 8–12. And a senior Navy official describes his staff's search for Deryck's personnel records at the Pacific Fleet Human Resources Office—the place most likely to contain his personnel records. Wallace Decl. ¶¶ 19–20. These descriptions are painstaking in their detail, and the law accords them "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (cleaned up).

Deryck tries to rebut the Government's presumed good faith, but he resorts to speculation as his first angle of attack. *See* Pl.'s X-MSJ at 17 ("Plaintiff has zero confidence that [the Government has] made a good faith effort to conduct a search for the . . . information requested." (cleaned up)). Beyond that, Deryck harps on the belated SAER discovery, arguing that the discovery of "additional documents after" initial searches proves the inadequacy of the Government's search process. *Id.* at 19.

But the law is more forgiving. When the Government learned of the SAER, it promptly produced it and "explained why [it] had been unidentifiable." *W. Ctr. For Journalism*, 116 F. Supp. 2d at 9. (It had been stored in a physical safe and had not been uploaded to an electronic DOD database. Wallace Decl. ¶ 66.) Because the Government "admit[ted] and correct[ed the] error," its "initial failure to turn over the additional responsive document[]" does not "demonstrate[] bad faith." *W. Ctr. For Journalism*, 116 F. Supp. 2d at 10.

In sum, Deryck has "not provided any non-speculative evidence that would permit the Court to doubt [the Government's] claims that [it] conducted a reasonable search of the locations most likely to contain responsive records." *Dillon*, 444 F. Supp. 3d at 91. So the Court concludes that the Government conducted adequate searches.

## 2.

Next, the missing Final Security Access Eligibility Report ("Final SAER") and the "DoDlogs." Deryck insists that a Final SAER exists, and he argues that the Government has not conducted a reasonable search until it searches the "DoDlogs." Pl.'s X-MSJ at 19. This argument misapprehends both the facts and the law.

As a factual matter, Deryck's assertion that a Final SAER exists rests on pure speculation. A DOD declarant explains that the agency does not always issue a Final SAER during clearance revocation proceedings. *See* Wallace Decl. ¶ 70. Sometimes, "other documents are used to substitute for" a Final SAER. *Id.* And here, he explains that a document titled "Decision on Proposed Indefinite Suspension"—which was produced to Deryck last year—likely served as the Final SAER "equivalent." *Id.* ¶ 71.

Deryck does not buy it. He says DOD still needs to search for the Final SAER in a database called "DoDlogs." Pl.'s X-MSJ at 19. But Deryck has offered no evidence that this database exists, or that it would contain the document he seeks. *Nolen v. DOJ*, 146 F. Supp. 3d 89, 97 (D.D.C. 2015) ("Once an agency has conducted a good faith search in response to a FOIA request, the burden is on the requesting party to provide evidence that other databases are reasonably likely to contain responsive documents." (cleaned up)).

On the contrary, two DOD declarants swear there are no "DoDlogs." Defs.' Opp'n & Reply Warning Decl. ¶ 17, ECF No. 48-1 ("To the best of my knowledge no system named

12

'DoDlog' exists within the Department of Defense or the Department of the Navy."); Defs.' Opp'n & Reply Landreaux Decl. ¶ 10–11, ECF No. 48-4 ("[T]he purported database or application called 'DoDlog' is not known, authorized, or in existence within [a DOD] environment/enclave."). According to DOD, it has "searched all locations where the document[] could have been found." Wallace Decl. ¶ 72. It simply did not find a Final SAER.

Under the law, the Government has done enough. Indeed, an "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur*, 355 F.3d at 678; *accord Shapiro v. DOJ*, 40 F.4th 609, 613 (D.C. Cir. 2022) ("In a FOIA case, a district court is not tasked with uncovering whether there might exist any other documents possibly responsive to the request." (cleaned up)). And even if Deryck had evidence that a Final SAER existed, the Government's searches would still be adequate. *See Boyd v. Crim. Div. of DOJ*, 475 F.3d 381, 391 (D.C. Cir. 2007) ("[T]he fact that a particular document . . . was not found does not demonstrate the inadequacy of a search.").

\*   \*   \*

The Government has met its "burden on summary judgment to demonstrate beyond material doubt that [its searches were] reasonably calculated to uncover all relevant documents." *Wilbur*, 355 F.3d at 678 (cleaned up). This remains true despite Deryck's arguments about processing errors, a Final SAER, and "DoDlogs."

### C.

That leaves the lawfulness of the Government's redaction and withholding decisions. On the eve of summary judgment briefing, Deryck blanketly objected to all the Government's decisions. *See* Defs.' Mot. Modify Summ. J. Briefing Sch. ¶ 3. Deryck has since narrowed his

position to two issues: whether the Government (1) properly invoked Privacy Act Exemption (d)(5) for a draft Request for Medical Evaluation; and (2) adequately provided Privacy Act exemptions for various redactions. Pl.'s X-MSJ at 22–28. The Government prevails on each issue.

### 1.

The Government properly invoked Privacy Act Exemption (d)(5) for a draft Request for Medical Evaluation ("Draft Request"). Exemption (d)(5) protects "any information compiled in reasonable anticipation of a civil action or proceeding." 5 U.S.C. § 552a(d)(5). It also covers "documents prepared in anticipation of *quasi-judicial* hearings" in administrative tribunals. *Martin v. Off. of Special Counsel,* 819 F.2d 1181, 1187 (D.C. Cir. 1987). "[T]he reasonableness of a party's anticipation of litigation is measured by . . . the objective probability that litigation will be initiated." *Mobley v. CIA*, 924 F. Supp. 2d 24, 62 (D.D.C. 2013) (cleaned up).

Deryck speculates that the Draft Request was "not compiled in reasonable anticipation of a civil action proceeding." Pl.'s X-MSJ at 19–20. But the Government's evidence proves otherwise. One DOD official explains that the agency "generally is on notice of the possibility of litigation flowing from security clearance determinations because further administrative appeals, if not civil litigation, often flow from those determinations." Greene Decl. ¶ 16. And here the agency had "heightened notice of the likelihood of litigation" because Deryck had hired an attorney—an allowable but atypical decision in security clearance proceedings. *Id.* So, at the very least, the Government reasonably anticipated further administrative proceedings when it created the Draft Request.

Next, Deryck argues that security clearance revocation proceedings are not "quasi-judicial hearings" subject to Privacy Act Exemption (d)(5). But clearance revocation

proceedings are materially identical to the Merit Systems Protection Board proceedings that *Martin* declared "quasi-judicial." *See* 819 F.2d at 1188. In a revocation proceeding, the subject has a "right to a hearing and the opportunity to cross-examine" adverse witnesses. DoDD 5220.6 at 4.3, *Defense Industrial Personnel Security Clearance Review Program* (Jan. 2, 1992), https://perma.cc/X49U-LS4D. He may "present evidence" on his behalf, or hire an attorney to do so. *Id.* And the subject may lodge evidentiary objections and seek limited discovery. *See id.* at E3.1.10–.11. As in *Martin*, the presence of these factors shows that revocation proceedings "are adversarial." 819 F.2d at 1188. Deryck agrees. *See* Pl.'s Reply at 17 ("[H]earings before the Defense Office of Hearing and Appeals (DOHA) are certainly adversarial[.]"). So the Court concludes that Deryck's revocation proceedings were "quasi-judicial" and therefore susceptible to Privacy Act Exemption (d)(5).

## 2.

Now for the last issue: the adequacy of the Government's Privacy Act exemptions in relation to the FOIA exemptions it invoked. "[A]n agency cannot withhold information based on FOIA if the information is subject to disclosure under the Privacy Act." *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 24 (D.D.C. 2009). That is because "[t]he two acts explicitly state that access to records under each is available without regard to exemptions under the other." *Martin*, 819 F.2d at 1184; *see also* 5 U.S.C. § 552a(t) (explaining relationship between FOIA and the Privacy Act). So if both FOIA and the Privacy Act apply to a particular record, an agency must point to an exemption from both laws to justify a redaction or withholding decision. *See Martin*, 819 F.2d at 1184.

Deryck broadly claims that the Government violated this double-justification rule. Pl.'s X-MSJ at 26. Then he homes in on one narrow category of records: "dozens of emails that are

about Mr. Deryck but only consist of [FOIA] exemptions." *Id.* But like the emails produced in response to the supplemental Navy request, *see supra* Section III.A, Deryck now "concedes that . . . government email systems are not systems of record subject to the Privacy Act." Pl.'s Reply at 20. So this issue is moot. *See 21st Century*, 318 F.3d at 198.[3]

**IV.**

For these reasons, the Court will grant the Government's Motion for Summary Judgment and deny Deryck's Cross-Motion for Summary Judgment. A separate Order will issue today.

Dated: September 20, 2024                              TREVOR N. McFADDEN, U.S.D.J.

---

[3] In what became a regrettable pattern throughout this case, Deryck raised a host of other, minor issues with the Government's productions. Pl.'s X-MSJ at 26–29. Then the Government promptly remedied the issues before the parties' summary judgment motions became ripe. Defs.' Opp'n & Reply at 11–12. Summary judgment should not replace good-faith negotiations.